HANOVER TRUST COMPANY, A BANKING CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF, v. NICHOLAS RIZZO AND MARIE BARBER RIZZO, DEFENDANTS.

Argued May 2, 1933—Decided May 22, 1933.

Before Justices PARKER and PERSKIE.

For the plaintiff, *Richard S. Wilson.*

For the defendant Marie Barber Rizzo, *Grover C. Richman.*

The opinion of the court was delivered by

PERSKIE, J.   This case comes up on the return of a rule to show cause why the judgment entered by default on October 19th, 1928, at the suit of Hanover Trust Company against Nicholas Rizzo and Marie Barber Rizzo, in the New Jersey Supreme Court (Mercer county) for $15,313.76, besides costs,

should not be opened as against Marie Barber Rizzo, the wife of Nicholas Rizzo, and that she be allowed to enter her appearance and defend the suit on the merits. The defendant bases her application on the ground of duress, merit and surprise.

It is the settled law of our state that before a judgment by default regularly entered will be opened for the purpose of interposing a defense the one seeking to invoke the aid of the court must show surprise and merit. *Schwenk* v. *DeMaio,* 79 *N. J. L.* 189; *Lavino* v. *National Surety Co.,* 104 *Id.* 475.

The judgment in this suit was based on two notes of the defendants. One for $6,000 dated January 7th, 1927, and one for $8,000, dated March 16th, 1927. The defendants tell an amazing, a most unusual story. The wife says that she had no business experience. It appears that she did have six years education at the Catholic School, at Chestnut Hill, Philadelphia, and one year at Notre Dame, at Philadelphia. That she lived *continuously* with her husband under one roof, submitting all this time to threats of bodily harm, violence and abuse. That between the period of the latter part of August, 1925, and March 15th, 1927, she signed some ninety-four notes, including the two above referred to, in blank, at the command of her husband. That she signed almost anything else laid before her by her husband in order to keep her peace. That she at no time complained to anyone because of his alleged ill treatment, nor did she at any time tell anyone connected with the Hanover Trust Company that she signed the notes under duress. The husband, an admitted bootlegger, shamelessly and brazenly corroborates the contention of his wife. In addition thereto he claims that some officials of the bank, particularly one Dugan, who is now dead, were implicated with him. To some extent one Vito Temmerello, a friend of the defendants, corroborates the ill treatment of the husband. On the other hand the testimony of the bank authorities is that they knew nothing of the alleged duress on the part of the husband.

Under these circumstances the law applicable is well established:

"Duress, to avoid contract, must be the act of the other party himself or his agent, or must be imposed with his knowledge, and taken advantage of by him for the purpose of obtaining the agreement. Duress by a third person will not avoid a contract made with a party who was not cognizant of it." 13 *Corp. Jur.* 403, § 324.

The late Chief Justice Gummere, in the cases of *Mullin* v. *Leamy,* 80 *N. J. L.* 484, and *Travis* v. *Unkart,* 89 *Id.* 571, held:

"Duress, to be available as a defense in an action upon contract, must have been exercised upon him who sets it up as a defense by him who claims the benefit of the contract, or by someone acting in his behalf, or with his knowledge."

The further point is made that the conveyances by the defendants to the bank were in accord and satisfaction of their indebtedness to it. Officials of the bank testify that this was not so. The deeds are absolute. The bank produces evidence to show that these defendants were given full credit for these conveyances and that the credit given was applied to other indebtedness of theirs to the bank, and had nothing to do with the notes on which judgment was entered; that the bank, through its officials, fully apprised the defendants of all these facts in writing. It may be, though we do not so decide, that if surprise were shown, the conflicting evidence indicates such merit in the defense as to justify an opening of the judgment even at this time.

But has the defendant shown surprise? We are clear that she has not. We are satisfied that the notes in question were regularly protested, and notice of protest was sent to these defendants. We are satisfied that there was proper service made of the summons and complaint. Supposing the husband did snatch these papers from her, what, if anything, did she do about it? According to her own testimony she did nothing. A plaintiff is not to be penalized or made accountable for the indifference, or inertia, of a defendant properly served. Suits against her were no novelty to her. She had been served with summonses in prior suits, resulting in judgment against her. From experience she knew or is chargeable with

knowing the consequences of a law suit. Having ignored these consequences she cannot now be heard to say that she is surprised.

But this is not all. The following are the questions propounded by her own counsel and her answers thereto, as to her knowledge of the law suit in New Jersey: *Q.* When did you first learn that a suit had been commenced in New Jersey against you? *A.* Prior to my mother's death. *Q.* When was that? *A.* My mother died year and a half ago. I went to see mother and she would not let me enter her home. I asked the reason why but I didn't get no answer. Then shortly after the papers were served on me. *Q.* You mean the papers in Pennsylvania? *A.* Yes, Pennsylvania.

An analysis of the foregoing testimony, in light of the uncontradicted facts and dates disclosed by the record, is not only interesting, but further adds to our belief that the defendant's testimony is not entitled to much credence and is dispositive of the contention that she was surprised. Her mother died on November 17th, 1931. The suit in the Common Pleas Court of Philadelphia was instituted on or about January 27th, 1933.

It is therefore apparent that she knew about the suit in New Jersey either prior to November 17th, 1931, or shortly thereafter. She surely could not have been referring at that time to the Pennsylvania suit because it did not come into being until January 27th, 1933. The contention of surprise is thus disposed of by the defendant herself.

We are therefore of the opinion that the rule to show cause should be discharged, with costs.